May it please the Court, this case centers on the privacies of life, as articulated by the Supreme Court in Riley v. California. Without any probable cause or reasonable suspicion or evidence of contraband, Mr. Elsharkawi, a United States citizen who was on his way out of the country on a religious pilgrimage, was still within the borders of the United States when he was detained, handcuffed, and refused legal representation that he requested, which continued for hours until after he agreed to provide access to his electronic devices. This occurred despite him having explained, among other things, his religious objections to private photographs of his family being viewed, and again, without any reason for suspicion other than that he was wearing religious attire. We believe that the District Court erred in four separate ways. First, it gave improper weight and made factual determinations against adverse to the non-movement in considering the declaration by one of the individual defendants. We believe that, contrary to the holding of the District Court, the searches which occurred did violate the Fourth Amendment under Riley and under this court's ruling of last year in US v. Cano. The defendant's actions also violated the First Amendment under the holdings of Riley, and also is consistent with this court's ruling in Arnold. And finally, long-standing authority of this court supports holding that federal actors, especially those acting outside the scope of their employment authority, can be held accountable under Section 1981 of the Civil Rights Act of 1866 and its later amendments. Counsel, if I could just jump in real quickly. As I understand your case, essentially, you have claimed for damages for what happened in the past, and you're hoping to get injunctive relief for what might happen in the future. Correct. If I could start your discussion, at least for me, on the judgment bar, 28 U.S.C. 2676. I know this came up kind of late because it kind of came up in the answering brief, so you only had your reply brief to talk about it. Correct. But as I look at it, it seems like this is a problem for you as to the retrospective relief. Can you start there and explain to me why the government is wrong about that bar? Yes, I can do that. The judgment bar does not apply here because these are claims that were brought all at the same time in front of the district court. These are not subsequent claims where we're trying to get a second bite at the apple. And these are claims which were all presented to the district court, again, simultaneously in the original complaint, ruled on by the district judge, two different results. The district judge came to a different outcome on the Section 1981 claim and on all of the claims that are on appeal here today before this court as compared to the Federal Tort Claims Act claims, which were before the district court as well. The FTCA claims went ahead in the district court, and these claims are the ones that we appeal as the district court had dismissed these, we believe, improperly. So there's no, again, there's no second bite at the apple happening here. We are not trying to get a double recovery. There's no double recovery at issue here because the actions against the individual defendants are brought against them in their individual capacities and outside the scope of their official capacity of their job duties. So outside the scope of their employment. Counsel, with respect, under the Federal Tort Claims Act, as I understand it, your client had a settlement with respect, I think it was like 20-some thousand dollars. Under those circumstances, isn't he barred from getting anything from an officer in the United States arising out of the same facts? Actually, I believe that he would be, just to clarify for purposes of the record, there was an offer of judgment which was made and accepted at the district court level on the FTCA claims only. And so those were brought against the United States and official capacity defendants on the tort claims. What is brought here against the individual defendants in their individual capacities under Section 1981 is a claim for interfering with his contractual rights. Section 1981 of the Civil Rights Act of 1866 prohibits preventing or hindering the ability of any individual to contract, to form a contract based on their race and then later, which has been recognized to include national origin. So the claims under Section 1981 against the individual defendants here are not based on their plight at the same time. It's the same whole broad day of events that occurred. But they're not based on, for example, the false imprisonment which was brought as a tort claim. This is based on interfering with the contractual rights of Mr. Elsharqawi and specifically the contracted issue is the airplane ticket which he purchased, which he was prevented from being able to use and not able to get a refund on due to the actions of the individual defendants and based on their representations to him, to the contrary, that they would not be preventing him from being able to use this ticket. Okay. I guess I'm troubled by this. I had the misfortune of sitting on Arnold, on Cotterman, but not on Kano. And I just, I must say I'm troubled, of course, the outcome for your client. But, you know, this happens every day when you have licensed people, they look at people coming through the line and they ask them questions and they ask them sometimes to show their phones and so on, as long as they don't use mechanical means to discover what's there and they ask them to open it up. I don't see the violation. What case would you cite? You don't need probable cause. You don't need reasonable suspicion to do that at the border, do you? Several things I'd like to address there, Your Honor. First, I am familiar with this court and your specifically experience with the predecessor cases. I would say that Riley and Kano are the ones that are the most applicable because, again, Kano came after Riley, which was in 2014. And again, the ultimate touchstone of the Fourth Amendment is reasonableness. When we look at the Fourth Amendment claims, it's whether the things that have been done is reasonable. The border exception is not an absolute bar and that's never been the rule in either the circuit or with respect. I mean, Riley's Riley. But we're talking about the border here. Anywhere but the border, I agree with you, there may be some question. But every person that goes through for an airline check anywhere, they can look at you and they can think they want to talk to you because they're concerned at the border that you may or may not create a problem. Do you agree that if you or I walked into, say, LAX and they looked and they thought I was really suspicious, you weren't, they let you go on through, they asked me some questions about where I was going and they wanted to look at my phone. What's wrong with that under our case law? Your Honor, the difference here and with the case law specifically as to the border search exception is that, again, it's not absolute. The cases have specified that being in the proximity of the border does not mean anything goes. That's the exact language from the holdings, that it does not mean anything goes. And particularly as to electronic data. With respect, what did they do in this case that was really unusual in a border situation where you had an international flight involved? Uh, that's frequently what at least we're told by border people that many of their issues arise in that area. Arnold was a guy was coming back from, I think the Philippines or something like that. Cotterman was in Mexico. And I mean, the fact is I'm just struggling to find what, what's so different about this. I mean, I'm sorry for your client. That's a sad thing. I want to talk to you about the standing issue. I'd like you to tell me based on Arnold, on Cotterman and Cano. The fact is that they border search. What happened to your client that you believe is violative of our law with respect to border searches? Yes, John, I'd be glad to do that. There are two things that are different from the facts that were present in Arnold and the other cases. As to Mr. Elsharkawi, the first is that he's outbound at the day that's in question. Mr. Elsharkawi was leaving the country. The border search exception was created to address two things, to address immigration and to address importation of contraband. There was no risk of either here. He's a U.S. citizen who was leaving the country. He wasn't going to be importing any. Okay, I've got it. I've been on a couple of cases where you had people that were spying for the Chinese government that had chips in certain parts of their bodies and they were outbound and found. That doesn't help you much here. The fact that you're outbound and inbound. I believe there is a difference. But I also believe that if we look at, again, in contrast to Arnold, the difference here is that with Mr. Arnold, there was a history of child pornography with the individual. And the individual had a, you know, there was basically reason to believe that there was a need to search further other than just an initial obvious search. The case law does make a difference between, for example, turning on a phone and seeing that it is a functioning phone or checking to see if what's labeled as call history is, in fact, call history, doing a cursory search versus going through it more. What happened with Mr. Al-Sharkawi is that he was asked by the agents questions about his eBay accounts, questions about his Amazon account, and about his purchases on those as a set forth in our complaints. So it was much more detailed and, again, without any correlation to contraband. And there must be correlation to contraband, which did not exist here. Even under the border search exception, that allows individuals at the border to search for contraband only. They may not search in a manner, and this is from Kano, they may not search in a manner untethered to the search for contraband. But that is exactly what happened here. The searches were untethered to the search for contraband and were completely fishing expeditions. And then what case would you cite for that proposition that the only thing that a border patrol agent can search without probable cause is for contraband? There's a quote, the quote that I just issued is from the Kano case. And I believe that it is also consistent with this court's holding in Arnold where it was saying that there was reason to believe in Arnold that there would be, that because of the history of child pornography, and even the case cited within Arnold at the first footnote, I believe it was the Seljan case, which is in the first footnote of the Arnold case, which is referencing an outbound case that it was different. And it had, it was decided en banc by this court subsequent to the Arnold decision being published. But in that case, again, the court looked at where it was appropriate to search paper because monetary instruments could have been contained in there and that would have been contraband. Also that there's, again, this court has said that the possibility of child pornography being present when there is reason to believe there may be, is also a valid reason to do a search of electronics that goes beyond simply making sure that it does, in fact, work, turning it on, making sure it is what it says it is. Okay. You have just a little less than three minutes. I know you wanted to save some time and I know my colleagues may have questions. I'm going to want you to tell me why your client has standing in both the injunctive issues and let's now hear from Mr. Coyle. Okay. Go ahead, Mr. Coyle. Good morning. May it please the court, Garrett Coyle from the Justice Department for the defendants. This appeal involves two sets of claims arising from the search of Mr. Elsharkawi's cell phones by DHS officers when he tried to leave the country on a flight to Saudi Arabia. The first set of claims are individual capacity section 1981 claims against the DHS officers. The most straightforward way to resolve those claims is the FTCA's judgment bar, which is designed to prevent double recoveries and avoid duplicative litigation. Under the statute, the $20,000 judgment that Mr. Elsharkawi won on his FTCA claims is a complete bar to the related individual capacity claims here. The second set of claims at issue in this appeal are official capacity claims for injunctive relief alleging that the search of Mr. Elsharkawi's cell phones was unconstitutional. This court should affirm the dismissal of those claims both for lack of standing and on the merits. There's no standing for either form of injunctive relief sought by Mr. Elsharkawi and the claims also fail on the merits because manual searches of cell phones at the border require no warrant, probable cause, or reasonable suspicion. Finally, the denial of leave to amend on futility grounds should also be affirmed. Beginning with the individual capacity claims, the FTCA's judgment bar applies when there's a judgment, the judgment came in an FTCA case, and the two sets of claims involve the same subject matter. Here, the district court entered a $20,000 judgment for Mr. Elsharkawi on his FTCA claims, and both the FTCA claims and the individual capacity section 1981 claims are based on the same alleged conduct at LAX by the same DHS officers. The judgment on those FTCA claims is thus the complete bar to the individual capacity claims, and there's no reason to send those claims back to let Mr. Elsharkawi try for a double recovery for the same events. The individual capacity claims also fail on the merits, but the court need not reach the merits if it agrees the claims are barred. Unless the court has questions on the merits of the individual capacity claims, I'll turn to the official capacity claim. Mr. Elsharkawi lacks standing to pursue either the backward-looking or forward-looking injunctive relief that he seeks on the official capacity claims. The district court found, based on the Doyle who conducted the search, that DHS has no data from the search of Mr. Elsharkawi's phones. And I have a question on that one, Mr. Coyle, on the issue of that declaration. In reviewing the facts, I believe it was initially Officer Stevenson who stopped him and had a discussion with him about his phone and actually seized his phone, took his phone for a period of time. The declaration of Officer Doyle, I think, uses the language, to my knowledge, no one did a forensic search. Why should the court not go do a deeper dive into that? Why is that sufficient? Is it not easy for Officer Doyle to say, to her knowledge, it didn't happen, but Officer Stevenson very well could have done some sort of forensic search? Judge, this gets to the issue of whether the complaint plausibly alleges a forensic search in the first place, and it does not. And the reason it does not plausibly allege a forensic search is the timeline of events alleged in the complaint. If there had already been a forensic search before Agent Doyle arrived, there would have been no need for her to get Mr. Elsharkawi to unlock the phones for her. So it's not plausible that there was a forensic search before Agent Doyle arrived. And the complaint alleges that after Agent Doyle arrived and conducted the search in Mr. Elsharkawi's presence, she gave the phones back to him and said he was free to leave. That's at SER 92, paragraph 67 of the complaint. Well, couldn't that mean they just didn't find anything in the forensic search? Your Honor, a forensic search is a search that involves connecting external computer equipment. You know what it requires, and they have those at the border, do they not? They have that equipment there to do those forensic searches if they feel they need to. Your Honor, it wouldn't be plausible that a manual search would turn up something that a forensic search didn't. A forensic search copies the entirety of the phone and analyzes it comprehensively. A manual search is just scrolling through, you know, thumbing through the device and seeing what's to a user. So it's not plausible that she would have needed to get Mr. Elsharkawi to unlock it and then to do a manual search if that forensic search had already been done. But I guess a bigger question for me is why is, to her knowledge, a sufficient... Why can the court rely on a document that says, to her knowledge, a forensic search wasn't done? Well, this would be better to say we have Stevenson, who had the phone in his possession, say, no, I didn't do a forensic search. And Officer Doyle say, yeah, there was no forensic search by me. I had him open the phone. Why did we get to rely on, to her knowledge? The only person in the complaint who is alleged to have conducted a search was Agent Doyle. So that's why we put in Agent Doyle's declaration. It's notable that Mr. Elsharkawi did not put in any contrary evidence of his own. He didn't ask for jurisdictional discovery on the issue. So he could ask Officer Stevenson or anyone else. He didn't ask for an evidentiary hearing where he could cross-examine Agent Doyle or any of the other officers. His only argument in district court and here is that the district court couldn't consider the declaration of Agent Doyle. And under the cases that we cited, when you have a factual 12B1 challenge to jurisdiction, it is appropriate for the court to consider evidence outside the complaint and resolve disputed factual issues. Okay. Is it correct that the plaintiff did not expressly deny the accuracy of Agent Doyle's declaration? Yes, that is correct. There was no dispute to what Agent Doyle said. The only argument made below was that Agent Doyle's declaration could not be considered at the Rule 12B1 stage and that is incorrect for the reasons we explained. The jurisdictional issue? Correct. Okay. As for the forward-looking injunction, Mr. Elsharkawi also lacks standing to pursue an injunction against future border searches because the complaint doesn't allege concrete future international travel plans. First, his three past trips, which notably did not involve searches of his cell phones, don't confer standing to pursue forward-looking injunctive relief. Second, his hoped-for trip in summer 2019, which had no specified destination or date, is also now in the past. And third, his intent to go on religious pilgrimage at some unspecified time in his life is not sufficiently concrete. What Mr. Elsharkawi is seeking is expungement of data that DHS doesn't have and a ban on future searches that he hasn't established are likely to occur. And this court shouldn't send the case back for what would amount to an advisory opinion. Mr. Coyle, let me ask you on the standing issue. Don't you think it's a little bit different where he has gone already three times? He has family there. He was on his way there when this happened. And it would appear that, unless he gave us an eye, you know, every time he updated his travel plans, it would appear that this man has sufficient connection, much to return to this country, where he has family, where he would obviously travel on a regular basis to visit them. He was traveling on that day. Why does it have to be so specific as to he'd have to update the court every year that this year I'd like to do this, this, and this? He certainly has a history of doing a number of these kinds of trips and was on a trip that day. Why isn't that sufficient? Well, first of all, it is his burden to allege sufficient facts to establish that the court has jurisdiction and that the court wouldn't be administering an advisory opinion if it ruled on his claims. And the three past trips, I mean, he has three past trips alleged in the complaint, but none of those involve searches of his cell phone. So we're not talking about he's repeatedly been subject to cell phone searches at the border such that it suggests that in the future, an additional cell phone search is likely to occur. So he would have to wait till it happened again before he could file a lawsuit? No, he would need to make allegations that it is likely to happen again in the future, that he has an imminent future injury. And the only future trouble alleged in the complaint at this point is the intent to go on religious pilgrimage at some point in his lifetime. And the Defenders of Wildlife case from the Supreme Court makes clear that sometime in my life with no specified date is not enough for standing. Even though his family is there and he's done three prior trips to visit his family. In the Defenders of Wildlife case, the two individuals who were seeking to establish standing had traveled to the areas in question in the past, and they alleged an intent to go back in the future at some unspecified time. There's no distinction between that and what we have here in this case. So how do you reconcile that with Ibrahim who, in that case, wanted to come back to the United States? In that case, the plaintiff had a series of invitations to come back to the United States, and she was obligated to deny everyone because she would not have been allowed in the country. It was obvious that she had ongoing invitations that she wanted to accept to travel into the United States and that she was obligated to decline. I was on that case, the en banc case, and as I recall, she was on the no-fly list, which of course is a very different thing than what you've got here. And she couldn't come back to finish her doctorate. She couldn't accept a number of speaking invitations and the like. So there were concrete, specific examples that were in the complaint that alleged her being indefinite, the suggestion that the person wants to go back for the pilgrimage to the Hajj. That's correct, Your Honor. Turning to the merits, I see I am down to a few minutes. Under this court's cases, no warrant, probable cause, or reasonable suspicion were required for Agent Doyle to manually search Mr. El-Sharkawi's cell phones when he tried to leave the country on a flight to Saudi Arabia. So the Fourth Amendment claims were correctly dismissed. And the First Amendment imposes no higher standard for border searches, so the First Amendment claims were also correctly dismissed. Unless the court has further questions? No questions by my colleague? Apparently not. So we'll hear from Ms. Jump for the balance of the rebuttal time. Thank you, Your Honor. I do want to address this court's questions as well as the comments by Judge Cordon as well. First of all, as to the retrospective relief sought, again, I do agree, and as has been presented in our briefs, that the very minimal bare-bones declaration by Defendant Doyle, which is one page, you know, in total, not counting the signature block, does not speak to the entirety of the time that his phone, that his phones, there are two phones, that his phones were out of his possession. It does not speak to the entirety of the individuals or agencies who examined them. Does your client's responses say, no, she's wrong, I saw this, I saw that, they have this, they have that machine, none of that's there, is it? He doesn't say that she specifically did do a forensic search, but first of all, again, as articulated earlier, he makes objections to the fact that he had to, despite having made clear the religious objections that he had, you know, reveal the information that was there, but in addition to that, he says that to the best of his knowledge, and that's what he's got to go on at this point, to the best of his knowledge and upon his own information and belief, there were other individuals who took his phones, who walked away with them, they were out of his view, and he believes in his good faith belief and has made a good faith allegation that his phones, one or both of them could have been searched at that time. Defendant Doyle speaks only to one phone, not both, and there were two cell phones which were taken, and she simply says, I did this, I did this, I did that, I did not record, I did not connect it to any external equipment, and to my knowledge, to her own personal knowledge only, neither HSI nor CBP has any copies of the contents of his phones. That's not enough. That's a take our word for it with a partial loop closed, and that is not enough at the motion to dismiss stage, again, where we have to take the allegations in favor of the non-movement to the extent that there is a dispute, and he does clearly plead that he believes that this was done outside of his presence, that information was taken down. He states that, you know, he believes that that was done by one or more individuals. He can't know for sure who did it outside of his presence. Correct me if I misunderstand, but I thought with respect to the second phone that he, there was no problem, and he stood there and watched the search. Is that wrong? Both phones were out of his possession at some point. Out of his sight? Out of his sight, yes. Where does it say that the second phone was out of his sight? Where in the record? I can pull that up from our complaint, or get that to you shortly. I don't have that specific site right, that specific paragraph site right now, but he does say that he was without both of his phones, one of which was locked, and that's the one on which Ms., or Defendant Doyle was focused, but I do want to speak again to the, as well, while I have some time left, hopefully. You don't actually have any time left, but let me ask my colleagues whether either has additional questions for, go ahead. Nope, nope. Okay, do you have any questions, Judge Cardone? No, thank you. We appreciate both of you, your argument, you're very able lawyers, and you've helped us with the case, so the case just argued is submitted, and the court stands in recess for the day. Thank you, Your Honors. Thank you. Court, for this session, defense adjourned.
judges: M. Smith, Owens, Cardone